Adam G. Clark (13047)
Shakira Zavala (18595)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84094
Tel: 801.758.7604
Fax: 801.893.3573
adam@stavroslaw.com
shakira@stavroslaw.com
*Attorneys for Chad K. Butler*

---

### IN THE UNITED STATES DISTRICT COURT IN AND FOR
### THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CHAD K. BUTLER, an individual, | **COMPLAINT** |
| Plaintiff, | **(JURY DEMAND)** |
| vs. | |
| TRANSAMERICA CAPITAL, LLC, an Iowa Limited Liability Company, and TRANSAMERICA LIFE INSURANCE COMPANY, an Iowa Corporation, | Case No. 2:26-cv-00223 |
| | Judge:_____ |
| Defendant. | |

Plaintiff Chad K. Butler, by and through his attorney of record, brings this Complaint against Defendant Transamerica Life Insurance Company and in support thereof alleges as follows:

### PRELIMINARY STATEMENT

1.  Plaintiff brings this action for violations of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA"), and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA").

**PARTIES, JURISDICTION, AND VENUE**

2.      Plaintiff Chad K. Butler ("Mr. Butler") is a resident of Salt Lake County, State of Utah.

3.      Defendant Transamerica Life Insurance Company is an Iowa Corporation with its principal place of business located at 4333 Edgewood Road NE, Cedar Rapids, IA 52499; Defendant Transamerica Capital, LLC is an Iowa Limited Liability Company with its principal place of business located at 1801 California St., Suite 5200, Denver, CO 80202 (collectively referred to herein as "Transamerica").

4.      At all relevant times, Defendants Transamerica Life Insurance Company and Transamerica Capital, LLC were affiliated entities operating as part of the same integrated enterprise under the Transamerica brand. Upon information and belief, Transamerica Capital, LLC acted as the distributor, marketer, administrator, and/or agent for Transamerica Life Insurance Company with respect to the products and services at issue. Defendants acted jointly and/or through agency relationships in the conduct alleged herein, and the precise roles of each Defendant will be confirmed through discovery.

5.      At all times relevant hereto, Transamerica conducted business in the state of Utah.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under the laws of the United States, including the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. This Court also has jurisdiction pursuant to 29 U.S.C. § 2617 and 42 U.S.C. § 12117(a).

7.      The employment practices alleged to be unlawful herein were committed in Salt Lake County, State of Utah, which is within the jurisdiction of the U.S. District Court for the

District of Utah, Central Division.

8.    This action is properly brought in the District of Utah, Central Division, pursuant to 28 U.S.C. § 1391(b) because claims asserted herein arose in this judicial district. Accordingly, venue is proper pursuant to 28 U.S.C. § 1391.

9.    On or about April 8, 2025, Mr. Butler filed a charge with the Equal Employment Opportunity Commission ("EEOC") and the Utah Antidiscrimination and Labor Division ("UALD").

10.    Mr. Butler received a notice of right to sue from the EEOC, the notice is dated December 16, 2025. Accordingly, Mr. Butler has timely exhausted all administrative prerequisites necessary to file this action.

## FACTUAL ALLEGATIONS

11.    Transamerica provides life insurance, retirement, and investment services to individuals, employers, and financial professionals across the United States.

12.    Transamerica hired Mr. Butler on or about June 30, 2023, as "Regional Vice President of Mutual Funds"

13.    Mr. Butler was hired as a non-commuting remote employee to cover UT, OR, and ID regions.

14.    Initially, Mr. Butler reported to Patrick Gustafson, who regularly praised his work and performance. In or around November 2023, Mr. Butler's direct supervisor changed to Jared Guerin ("Mr. Guerin").

15.    Mr. Butler customarily worked 40 hours per week for Transamerica. Mr. Butler performed his job duties and responsibilities in accordance with the terms of his employment and consistently met or exceeded Transamerica's reasonable expectations.

16.     Beginning in late 2023 and continuing into early 2024, Mr. Butler experienced a significant worsening of his depression, a condition for which he has a documented history and ongoing medical treatment. During this period, Mr. Butler contacted his treating physician multiple times regarding severe & worsening depressive symptoms.

17.     As a result, Mr. Butler's depression substantially limited his ability to perform major life activities, including concentration, stress management, and emotional regulation. Accordingly, Mr. Butler is "disabled" as defined by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102.

18.     On or about March 12, 2024, Mr. Butler disclosed his disability to Mr. Guerin via text message, informing him that he "had depression" and was "currently struggling with it more than usual." The following day, Mr. Guerin called Mr. Butler to inform him of the firm's Employee Assistance Program (EAP) resources, but he did not notify Mr. Butler that depression could be considered a disability or that it might qualify for protections under the ADA. At the time, Mr. Butler was unaware that his depression and Bipolar II disorder could be recognized as a disability. He disclosed his condition because, despite working extremely hard, he was struggling mentally and needed support. Immediately following this disclosure, the expectations for his work were significantly changed.

19.     Almost immediately after this disclosure, Mr. Guerin drastically altered the terms and conditions of Mr. Butler's employment.

20.     Specifically, Mr. Guerin required Mr. Butler to conduct thirty in-person meetings per week, with at least fifteen scheduled at least two weeks in advance with accepted calendar invites. These expectations were unattainable given the scope of Mr. Butler's territory and were not imposed on similarly situated colleagues. Mr. Butler reasonably perceived this sudden

escalation as discriminatory and harassing.

21.     Around May 2024, Mr. Butler contacted Human Resources ("HR") regarding short-term disability, FMLA, and ADA accommodations.

22.     As soon as Mr. Butler's expectations increased, and immediately after being approved for ADA accommodation, Mr. Guerin repeatedly told Mr. Butler that he was not meeting expectations, even if he was.

23.     On June 12, 2024, Mr. Butler shared, via email, with Mr. Guerin: "Jared, I need to take some time off to figure out what is going on. I don't want to be alive anymore, which for obvious reasons makes it difficult for me to work. I am in the process of working with multiple doctors and just need a little time to sort this out."

24.     Days later Jacinta called Mr. Butler. During that call, they discussed him gradually getting back to normal, and Mr. Butler expressed how excited he was to be back at work. During the conversation, she asked whether Mr. Butler wanted to move forward with the FMLA/ADA request, given that he seemed to be doing well and might not need it. Mr. Butler responded that he hoped he would not need it, but that he would like to have it on file in case he did need it in the future. Jacinta then asked if Mr. Butler needed anything at that exact moment, and Mr. Butler said no. At that point, she very strongly emphasized that there should be no more unexcused absences.

25.     On or about June 24, 2024, Mr. Butler formally submitted requests for intermittent leave under the Family and Medical Leave Act ("FMLA") and accommodations under the ADA.

26.     Following approval, HR Representative Jacinta Jargo ("Ms. Jargo") and Mr. Guerin implemented "modified" expectations purportedly to accommodate Mr. Butler's disability. Mr. Butler was not included in any discussions regarding these modifications and was not engaged in the interactive process. The expectations were created for him and then presented as the new

"adjusted" requirements going forward. Under these modified expectations, he was required to attend fifteen in-person meetings per week and schedule fifteen meetings at least two weeks in advance with accepted calendar invites, while being held to weekly sales and meetings quotas, a standard he had never been subject to previously, nor was it applied to any of his colleagues.

27.     Despite what appeared to be an adjustment, Mr. Guerin and HR continued to impose unreasonable scrutiny and differential treatment.

28.     Subsequently, Mr. Butler expressed concerns about being retaliated against directly to HR and Mr. Guerin. Mr. Butler outlined disparate treatment, stating that no such expectations were being required of his similarly situated colleagues.

29.     Mr. Butler's colleagues often met no more than half of the requirements being imposed upon Mr. Butler.

30.     Mr. Butler sent several emails to Ms. Jargo requesting an investigation into Mr. Guerin's discriminatory and retaliatory conduct against Mr. Butler. Ms. Jargo did not provide a meaningful response.

31.     Mr. Butler got in contact with Transamerica Director and explained the discrimination and retaliation he was being subjected to after engaging in protected activity. The Director did not provide a meaningful response.

32.     Throughout this period, Mr. Butler continued to perform his job diligently and met the expectations reasonably achievable given his disability and the accommodations in place. Nevertheless, he was subjected to ongoing retaliation, hostility, and adverse employment actions in response to his requests for ADA accommodations and FMLA leave.

33.     Transamerica also instructed Mr. Butler to engage in business practices inconsistent with his professional judgment, including using his budget to "buy business" by offering

sponsorship funds in exchange for sales. While budgets provided to RVPs are intended for sponsorships, it is illegal and unethical to use the funds to "buy business." For example, after securing a large sale from an advisory team, Mr. Butler offered to support an educational event they had coming up. When he approached Jared about this, Jared questioned why he would want to do that since he had already received the sale, effectively pressuring him to use funds in a manner contrary to ethical and legal standards.

34.     Mr. Butler expressed concern regarding these directives, but Mr. Guerin provided little guidance and continued to criticize his performance.

35.     On or about November 8, 2024, after repeated denial of reasonable accommodations, the imposition of increased and disparate expectations, and ongoing retaliation, Mr. Butler resigned because he had no viable alternative to preserve his health and employment rights. During his FMLA leave, his mental health improved significantly, and he feared that returning to work at Transamerica would cause a severe deterioration in his condition. He communicated to his therapist that returning to the same environment would place his mental health at serious risk, leaving him with no reasonable choice but to resign.

36.     At all times relevant to this action, Mr. Butler was qualified to perform the essential functions of his position, with or without reasonable accommodation. Defendants' conduct caused him harm, including lost wages, emotional distress, and impairment of his professional opportunities.

37.     Defendants employed more than fifty (50) employees within seventy-five (75) miles of Mr. Butler's workspace, making them an "employer" as defined under the FMLA, 29 U.S.C. § 2611, and Mr. Butler an "eligible employee" under 29 U.S.C. § 2618.

38.     At all times relevant to this action, Transamerica had more than 50 employees who

worked within a 75-mile radius of Mr. Butler's workspace.

39.    Accordingly, Transamerica is an "employer" as that term is defined in the FMLA, 29 U.S.C. § 2611, and Mr. Butler was an "eligible employee" as that term is defined in the FMLA, 29 U.S.C. § 2618.

### FIRST CAUSE OF ACTION
### Discrimination and Retaliation in Violation of the FMLA

40.    Mr. Butler incorporates by reference all preceding paragraphs as though fully set forth herein.

41.    The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2612, entitles an eligible employee to take up to twelve (12) workweeks of leave during a 12-month period due to the employee's serious health condition.

42.    The FMLA, 29 U.S.C. § 2615(a)(2), prohibits an employer from discriminating or retaliating against an employee for requesting or taking FMLA leave.

43.    Mr. Butler engaged in protected activity under the FMLA by requesting intermittent FMLA leave, requesting ADA accommodations related to his serious health condition, and taking FMLA leave as set forth above.

44.    Transamerica, through its agents and employees, constructively terminated Mr. Butler's employment in direct retaliation for requesting and/or taking FMLA leave, in violation of 29 U.S.C. § 2615.

45.    As a direct and proximate result of Transamerica's unlawful conduct, Mr. Butler has suffered lost wages, lost employment benefits, and other economic and non-economic damages.

46.    Mr. Butler is entitled to recover all damages caused by Transamerica's violations, including prejudgment interest on economic losses, liquidated damages as provided by 29 U.S.C.

§ 2617(a)(1), and his reasonable attorneys' fees and costs of this action.

47.    The conduct of Transamerica was willful, knowing, and demonstrated a reckless disregard for Mr. Butler's rights under the FMLA. Accordingly, Mr. Butler seeks an award of liquidated damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**Interference in Violation of the FMLA**

48.    Mr. Butler incorporates by reference all preceding paragraphs as though fully set forth herein.

49.    The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2615(a)(1), prohibits employers from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any right provided under the FMLA.

50.    Transamerica, through its agents and employees, unlawfully interfered with Mr. Butler's rights under the FMLA by, among other things:

    a.    Misinforming him regarding his FMLA rights;

    b.    Imposing unreasonably high and unattainable work expectations immediately after he requested and/or was approved for FMLA leave;

    c.    Subjecting him to disparate treatment compared to similarly situated employees; and

    d.    Failing to provide meaningful responses or accommodations in connection with his FMLA requests.

51.    As a direct and proximate result of Transamerica's unlawful interference, Mr. Butler has suffered lost wages, lost employment benefits, and other economic and non-economic damages.

52.    Mr. Butler is entitled to recover all damages caused by Transamerica's violations,

including prejudgment interest on economic losses, liquidated damages pursuant to 29 U.S.C. § 2617(a)(1), and his reasonable attorneys' fees and costs of this action.

53.     Transamerica's conduct was willful, deliberate, and in knowing violation of the FMLA. Mr. Butler therefore seeks liquidated damages in addition to all other remedies available under 29 U.S.C. § 2617(a)(1).

**THIRD CAUSE OF ACTION**
**Discrimination in Violation of the ADA**

54.     Mr. Butler incorporates by reference all preceding paragraphs as though fully set forth herein.

55.     The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 et seq., prohibits employers from discriminating against qualified individuals on the basis of a disability.

56.     At all times relevant hereto, Transamerica was aware that Mr. Butler has a medical condition, depression, that substantially limits one or more major life activities, including but not limited to concentration, sleep, and the ability to work, and therefore constitutes a "disability" as defined under the ADA.

57.     At all times relevant hereto, Mr. Butler was a qualified individual with a disability. He was able to perform all essential functions of his employment with Transamerica, with or without reasonable accommodation.

58.     Following Mr. Butler's disclosure of his disability, Transamerica, through its agents and employees, engaged in discriminatory and retaliatory conduct, including, but not limited to:

59.     Drastically increasing and imposing unattainable work expectations that were not required of similarly situated employees;

60.     Failing to respond meaningfully to repeated requests for reasonable accommodations;

61.     Misinforming Mr. Butler regarding eligibility for ADA protections;

62.     Subjecting Mr. Butler to heightened scrutiny, disparate treatment, and retaliatory actions for requesting accommodations; and

63.     Failing to provide a supportive work environment in which he could perform the essential functions of his position.

64.     As a direct and proximate result of Transamerica's discriminatory and retaliatory conduct, Mr. Butler was constructively terminated from his employment.

65.     Transamerica's conduct has caused Mr. Butler to suffer substantial lost wages and employment benefits, and has caused him severe emotional distress, pain, suffering, and mental anguish.

66.     Mr. Butler seeks recovery of his lost wages, employment benefits, consequential losses, and compensatory damages in amounts to be proven at trial and subject to discovery.

67.     Mr. Butler further seeks recovery of his reasonable attorney's fees and costs pursuant to 42 U.S.C. § 12205.

68.     The conduct of Transamerica was willful, malicious, and demonstrated a knowing and reckless indifference to Mr. Butler's rights under the ADA. Accordingly, Mr. Butler requests an award of punitive damages in an amount to be determined by the trier of fact.

### FOURTH CAUSE OF ACTION
### Retaliation Violation of the ADA

69.     Mr. Butler incorporates by reference all preceding paragraphs as though fully set forth herein.

70.   The Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12203, prohibits retaliation against an employee who has engaged in protected activity, including requesting reasonable accommodations for a disability.

71.   Mr. Butler engaged in protected activity when he requested accommodations for his disability, including intermittent leave and modifications to his work expectations under the ADA.

72.   Following Mr. Butler's protected requests, Transamerica, through its agents and employees, subjected Mr. Butler to retaliatory actions, including:

73.   Significantly increasing work expectations beyond what was reasonable or required of similarly situated employees;

74.   Failing to respond meaningfully to repeated requests for accommodations;

75.   Subjecting Mr. Butler to heightened scrutiny, disparagement, and other adverse employment actions; and

76.   Constructively terminating Mr. Butler by creating working conditions so intolerable that he had no choice but to resign.

77.   Transamerica's retaliatory actions were taken because Mr. Butler engaged in protected activity under the ADA.

78.   As a direct and proximate result of Transamerica's retaliation, Mr. Butler has suffered substantial lost wages, benefits, emotional distress, pain, and suffering.

79.   Mr. Butler seeks recovery of all lost wages, employment benefits, consequential losses, compensatory damages, prejudgment interest, and reasonable attorney's fees and costs pursuant to 42 U.S.C. § 12205.

80.     The conduct of Transamerica was willful, malicious, and exhibited a knowing and reckless disregard of Mr. Butler's rights under the ADA. Accordingly, Mr. Butler seeks punitive damages in an amount to be determined by the trier of fact.

## FIFTH CAUSE OF ACTION
### Constructive Termination

81.     Mr. Butler incorporates by reference all preceding paragraphs as though fully set forth herein.

82.     Transamerica created and maintained working conditions that were so intolerable, discriminatory, and retaliatory that a reasonable employee in Mr. Butler's position would have no choice but to resign. Such conditions include, but are not limited to:

83.     Unreasonably increasing work expectations immediately after Mr. Butler disclosed his disability;

84.     Imposing stricter standards and heightened scrutiny than applied to similarly situated employees;

85.     Failing to provide reasonable accommodations despite repeated requests under the ADA and FMLA;

86.     Subjecting Mr. Butler to disparagement, harassment, and retaliation from supervisors and management; and

87.     Ignoring repeated complaints and failing to investigate or correct discriminatory or retaliatory conduct.

88.     As a direct and proximate result of Transamerica's actions, Mr. Butler was forced to resign his employment on or about November 8, 2024.

89.     Transamerica's constructive termination of Mr. Butler was intentional, discriminatory, and retaliatory, in violation of the ADA, FMLA, and applicable employment laws.

90.     Mr. Butler has suffered and continues to suffer economic damages, including lost wages and benefits, as well as emotional distress, pain, and suffering as a direct result of Transamerica's conduct.

91.     Mr. Butler seeks recovery of all lost wages, employment benefits, consequential damages, compensatory damages, prejudgment interest, and reasonable attorney's fees and costs. Mr. Butler also seeks punitive damages in an amount to be determined by the trier of fact, as Transamerica's conduct was willful, malicious, and showed a knowing and reckless disregard for his rights.

## JURY DEMAND

92.     Pursuant to Fed. R. Civ. P. 38, Mr. Butler demands a trial by jury on all issues so triable.

## CONCLUSION & REQUEST FOR RELIEF

WHEREFORE, Mr. Butler respectfully requests judgment and relief against Transamerica as follows:

(1)     A judgment awarding Mr. Butler all lost wages, benefits, and other employment compensation caused by Transamerica's violations of the FMLA and ADA;

(2)     A judgment awarding Mr. Butler liquidated damages pursuant to 29 U.S.C. § 2617;

(3)     A judgment awarding Mr. Butler compensatory damages, including for emotional distress and other non-pecuniary losses, in amounts to be determined by the trier of fact;

(4)      A judgment awarding Mr. Butler punitive damages in an amount to be determined by the trier of fact;

(5)      A judgment awarding Mr. Butler his reasonable attorney's fees and court costs, including any expert witness fees;

(6)      A judgment awarding Mr. Butler prejudgment and post-judgment interest at the highest lawful rates; and

(7)      A judgment awarding Mr. Butler such other and further legal or equitable relief as the Court deems just and proper..

DATED this 17th day of March 2026.

STAVROS LAW P.C.

/s/ Shakira Zavala
Shakir Zavala
*Attorneys for Chad K. Butler*